Mr. Wallace, come on up. Thank you, Your Honor. May it please the Court, I'm Mike Wallace from Mississippi. I'm counsel for the Mississippi House of Representatives and five of its individual members. The two issues in this case are legislative immunity and the jurisdiction of the district court. It was the denial of legislative immunity that brings this order before the court as an interlocutory appeal. The district court's jurisdiction is part of the pendent appellate jurisdiction of this court and may be considered along with immunity. An ordinarily jurisdiction is where this court will begin and that's where I'll begin. There are two different decisions of this court which preclude district court jurisdiction for two separate grounds. One statutory, one constitutional. The statutory ground comes from the Hubbard case back in 1972 when this court unequivocally said that Section 1344 is the only jurisdictional statute that grants jurisdiction to consider an election contest, which at bottom is what this case is. All parties agree that the standards of Section 1344 are not met in this case and if this is an election contest, that ought to end the case. The district court says it's not really an election contest. The district court says people are arguing about their right to vote, which was guaranteed in the Dunn case, and therefore you have Section 1331, federal question jurisdiction, which was established by Powell v. McCormick. But the problem with that is that both Dunn and Powell v. McCormick had already been decided when this court decided the Hubbard case. This court was obliged to examine its own jurisdiction as it did and it concluded that there is or examined the district court's jurisdiction and they decided 1344 is all you had. Powell didn't apply and neither did Dunn. Now, the district court didn't say what remedy it could apply. If this isn't an election contest and we're not giving you your seat back, what is the remedy? And the district court didn't say. The plaintiffs have said in this court that, well, what they want is a new election. But that's exactly what the plaintiffs wanted in the Hubbard case. It was an election contest. It was brought by voters. Doesn't that also go to standing? That's the constitutional issue that I'm getting to right now, Your Honor, is that in Oklahoma, this court says there are two elements of constitutional standing. That you have to allege that the defendants caused your injury. Well, maybe that's been alleged here. But you have to allege that the defendants can redress it. And there is no allegation that these defendants have any authority to give anybody a new election. So that is the remedy they are asking for is a new election. In their brief in this case, Your Honor, they ask for a new election. In their complaint, they don't. In their complaint, they ask that Mr. Eaton be declared the winner. Can any of these defendants grant the remedy that they seek, that is ordering a new election in Smith and Jasper counties? None of these defendants can do that as we've cited. And, of course, it was in our rebuttal brief because it wasn't until their brief they said we want an election. But if you look at our rebuttal brief, only the governor of Mississippi can issue writs of election. And he's not a party here. And he can order a writ of election only when there's a vacancy to be filled. And there's no vacancy. I mean, the Smith County authorities, Smith and Jasper County authorities, have no authority to order a new election themselves. No, they don't, Your Honor. Only the state courts have no authority in that area. State courts have no authority in this case to order a new election. There has to be a vacancy, which none of these defendants are able to do. This seat's been full for two years now. And even if there were a vacancy, only the governor could order the new election. But they could, as a remedy here, it seems to me, ask that nobody be seated. But I don't know whether that is a remedy for the injury of their claim. I don't think it is, Your Honor. The basis of their injury is the efficacy of the right to vote. To declare the seat vacant voids everybody's right to vote. So I don't think that would work. Judge Owen. I was going to say, is the remedy in state court or in the state system for an election contest a decision about who won that election as opposed to a new election? If you get into a state court, yes, that's the remedy. They have jury trials, and the question before the jury by statute is who got the most lawful votes. Now, because this is a legislative case confined to the jurisdiction of the legislature by the Constitution, you can't get into state court with this. The Constitution says this is subject to the sole jurisdiction of the House, and the House has exercised jurisdiction. But in a case where the courts do exercise jurisdiction, they decide who won. I was asking about election contests. I mean, okay. So you're saying there is no state remedy in these circumstances for a new election period. There is none, not statutorily or otherwise. So none of these defendants can grant them the kick. They could refuse to seat either of the claimants, and that would create a vacancy that would allow the governor and his discretion to order a new election. Is that correct? They could have done that two years ago under the House rules, Judge Jolly, but they didn't. They adjudicated the case, and they sat the lawful winner. There is no authority in the rules to refuse to seat anybody two years after the fact. They've made their decision, and I don't think there's any provision in state law for changing it. The decision is constitutionally vested with the House, just as in the federal system. The decision in an election contest is irreversibly vested in Congress. Judge? Back up a step for me. So do I understand what you're saying to be because of what's in the Mississippi Constitution, vis-a-vis the jurisdiction for this kind of contest, that's why there's no state court jurisdiction? Is that what you're saying? That's correct, Your Honor. Justice? So in the process here where there's a tie vote, which in and of itself seems sort of remarkable in this day and age, but so where there's a tie vote and there's this methodology for if there's a tie vote, the pulling the straw, et cetera, et cetera. So a citizen would not be able to go in the state court in Mississippi and, say, challenge that process or the process here of pulling the straws and all that. It's just absolutely the constitutional provision in Mississippi puts it solely, whatever one says or not about the process is within the exclusive domain of the House. Is that? That is the way I read the Constitution, Your Honor. I can tell you nobody has ever gone. Well, I take that back. There have been cases in Mississippi where people have tried to challenge House election contests or Senate election contests, and the Supreme Court has told them you can't do that. Most recently there's one cited on our reply brief where it came up again just last year, and the Supreme Court says no, sole jurisdiction in the House. That's not unusual. That is the federal case. That you look at Routabush v. Harkey and subsequent cases, it's pretty clear that if you're in the federal system, sole jurisdiction to do an election contest is in the House. Now, in Powell v. McCormick, he came back and he sued for his salary. And a suit over money you can litigate in lots of different places, but Mr. Eaton is not suing here, and the question isn't should he get paid. The question is who gets to sit in that seat. In the federal system there's no court jurisdiction. In the Mississippi system there's no court jurisdiction. The person who, I'm trying to remember because I read his briefs a long time ago, the person who got the short straw or who didn't get the poll. His name is Powell. Is or is not a plaintiff in any of this. He filed a contest in the House. He is not a party to this case. He filed the contest in the House, and he did it before they pulled the straws because he thought he had the lawful votes and he didn't want to be a sore loser. And he says, I think I won. And the House said, you did win. And then these five voters, after the fact, filed this suit. But the man in the seat is not here.  Then the question would be, is that defendant the state? That raises the Eleventh Amendment question. I think it's clear that these five individual members can't do anything. Could the House be ordered to do something? Case after case, at least at the district court level, says that a legislature is the state for Eleventh Amendment purposes. The Hall case said that about the Louisiana legislature. The Porter case said that about the Indiana legislature. The district court in the Larson case, all of which are signed in our brief, said that about the Pennsylvania legislature. Even if it's not obviously the state, what the district court went off on is ex parte young, which is a legal fiction that says if you've got a constitutional issue that involves the state, you can sue a state officer. The KP case, this court's probably most recent decision, says that the young exception applies where a state officer has some connection with the enforcement of an unconstitutional law. But the House isn't an officer. It's an institution. It's clearly the state. Young doesn't apply to that. And there's no unconstitutional law here. The statute is perfectly constitutional. They just claim we misapplied it. It has already been enforced. They're looking for a retrospective remedy here to set aside our application of the law. And young has always been mandatory injunctions. You shall not do this. I'm sorry, a prohibitory injunction. You shall not do this. What they want is a retroactive mandatory injunction saying you should undo something you've already done. Can't do that under ex parte young. It has to be prospective. So ex parte young doesn't apply. The issue that brought us here is absolute immunity, legislative immunity. The Tenney case says that a legislator's act is legislative unless it is clearly executive or judicial. The district court here said, well, it's not legislative, but the district court didn't say what it is. We never get into those issues if the case is decided adversely to the plaintiffs in this case, either on standing or the 11th amendment. That is correct, Your Honor. You only get to this if you disagree with everything I've said so far, which is entirely possible. My question is can we get to that question unless the district court has jurisdiction? No, you can't. I think that's what Steel Company says. You have to deal with jurisdiction first. If you disagree with everything I've said and think there was jurisdiction, then you have to get to legislative immunity. This is clearly a legislative act. There's not an executive act. Nobody acted as prosecutor. It looks a little bit like a judicial act, but if it's that, then Rooker Feldman says the district court doesn't have jurisdiction. The definition in Tenney and subsequent cases is immunity applies to legitimate legislative activity, and Gravel and Eastland say that includes other matters which the Constitution placed within the jurisdiction of either house. Election contests are placed by the Constitution within the jurisdiction of the house. That's federal and state both. And if you look at the court of appeals cases cited in our briefs, you will see there are lots of actions that legislatures take that may not look like traditional legislation but have been held to be traditional legislative immunity. But immunity protects you from money damages. Does it protect you from injunctive relief? It protects you from everything, because part of the basis of immunity is to protect you from the burden of having to come to court to defend yourself. It gets you out altogether. So the Third Circuit in Larson says you can't contest an impeachment. As you may know, in Virginia, the General Assembly elects state judges. The Fourth Circuit in Schlitz says when the General Assembly refuses to reelect a judge, that's a legislative act. Fourth Circuit in Whitener says disciplining a member is a legislative act. Ninth Circuit says in Schultz that compelling attendance by a member is a legislative act. All of these actions directed toward individual people are nevertheless legislative acts, and case after case in the courts of appeals would also be covered here. The final thing I'll say, and I'll sit down, the district court relied on the Hughes case from this court. That really does apply to local governments where you don't have separation of legislative, executive, and judicial powers. The Third Circuit has said we don't apply that rule at the state level, and I don't think you should. But even if you apply Hughes, they say you're protected unless there's bad faith. There's no bad faith here. We applied the statute. The real issue in this case is did we apply Mississippi law correctly. You read their complaint. They say we should have followed an attorney general opinion. We followed a Supreme Court opinion. We think we got it right, but even if we got Mississippi law wrong, we clearly acted in good faith, and that's enough for you to be under Hughes. All right. I thank the Court. Thank you, Mr. Wallace. All right, Mr. Corlew. Thank you very much, Your Honor. John Corlew for the fine apologies here. First, I'd like to disagree vehemently with three things that Mr. Wallace said that we were seeking. Number one, he says that there's no question but that this is an election contest brought under 28 U.S.C. section 1344. We didn't bring this case under section 1344. We brought it under section 1343, subsection 1. It is not an election contest. It is a contest about whether the constitutional rights of citizens to vote has been denied to them. It is not an election contest. Number two, Mr. Wallace. What's the remedy you seek for that? Your Honor, if I may, I'd like to get to that. There are lots of things that can be addressed about the remedy, and maybe I'll just go there now. Under the United States Constitution, federal courts have equitable powers, and they can utilize those equitable powers to fashion lots of remedies. And one thing that a trial would allow in the district court, as the cases indicate, is for the district court to consider what remedies are appropriate. What is the remedy you are seeking? My first request, Your Honor, is that we be allowed to proceed in the district court to demonstrate to the district court that our voters' rights have been denied. How are you going to remedy the denial of that right under these circumstances? The district court, hopefully, will fashion a remedy. If the plaintiff comes in and says, I don't know what my remedy is, I'm going to let the district court fashion it, I mean, you're starting off on a very weak leg. I've come in saying that these plaintiffs have been denied their federal constitutional right to vote, their federal constitutional right to vote in a state election, and that the federal courts are not impotent to give them a remedy for the denial of their right to vote. If you've got nothing but a declarative— Your Honor, I think— Now, that is not standing. You have not presented a redressable injury. Your Honor, I looked at the KP case, and I think the—I can't pronounce the word. You probably can. Okpulobi B. Foster. And, you know, they say that there are three factors that you consider in that regard. One is injury in fact. I have five citizens who have been denied their right to vote. Two is causation. There's absolutely no question but that the causation came from the denial by the special committee and the legislature. And three is what you're hopping or hitting on, is redressability. But KP in your case, the Okpulobi case, say that you don't have to address every injury. If this court did nothing but enter a declaratory judgment that said that these citizens had the constitutional right to vote and it had been denied to them by the Mississippi legislature— I mean, a declaration saying that? I mean, that's not what we do. Well— I mean, even assuming that your premise of the denial would be correct, but the question is would you be asking the federal court with all of its equitable power to merely declare that that is a truism? But, I mean, we don't do advanced repair. I mean, what would be the basis of— Well, with all due respect, Your Honor, it's what we seek to go to the district court to flesh out. Not only have they pled— Flesh out how the—there's nothing controverted, at least as I understand it. I mean, the election occurred, what, two years ago, give or take. The person who won, I mean, the flip of the coin or whatever, that person has been in office serving, you know, for two years. So, you know, there's no putting that toothpaste back in the tube. I mean, and so you say there is no election contest, so there was nothing filed to, you know, upset what transpired. So all of that has occurred. So even if what you assert is correct in the abstract, what is it you are anchoring your claim to us that we can do? Go ahead. One thing this court has absolutely done is set aside an election. But you just said this is not an election contest. So what would be the basis of us setting aside an election to which there is and has not been a contest of the election? To address the equitable and the constitutional right to address as an equitable remedy the constitutional right of these citizens to vote. How does that vindicate the right of those five or nine persons, however many there is, of the right to vote to set aside the election? They could say that those folks don't have the election. We're not going to have a new election. We're just going to set aside the election. And, of course, that doesn't consider the fact that, I mean, everybody has a right to vote, and you're setting aside everybody's right. I mean, you're a very good lawyer with a very good reputation in the state of Mississippi. And it seems to me that you're just fumbling over this issue, and you're doing it because there's nothing there. Well, Your Honor, respectfully, if we do not have a remedy in this court, then the fact is that the United States court system cannot protect the constitutional right of a citizen to vote. Let's probe that a little bit more. All right. What happened here, according to the Mississippi legislature, is these plaintiffs moved within a district to a different precinct and didn't tell the state within, was it 30 days, that they had moved. Is that right? No. No? No. Mr. Joshua Allen says that he went and registered to vote in the precinct that he lives in, in Smith County, and that they transferred his registration to the Secretary of State's office where they maintain the statewide election management system. They call it the SIM system. So when it got to the Secretary of State's office, they put the man's registration into Webster County, Mississippi. So when this citizen came to the polls to vote in the precinct that he lived in and had registered in, they said, You're not in the poll book. Is that a matter of state law? How does that get to be a federal question? Well, if I can continue. They said, You are in Webster County. You're not here. And he said, No, I'm here. They said, Fine. We have a state law that allows you to vote a provisional ballot, an affidavit ballot, and you can put all these things on your affidavit and tell us what the facts are. And then the state law says that you set those provisional or affidavit ballots aside, and once the election votes have come in on the day of the election, the Smith County Election Commission is charged with the duty of investigating the facts in those affidavits. And when they investigated the facts as to Mr. Allen, they learned that Mr. Allen was correctly living in the precinct where he registered to vote, that he had correctly registered to vote, and that some computer had sent him to Webster County. So they said, We're going to count his vote under state law. And when he gets to the legislature, the legislative committee and the legislature itself said, No, the computer put you in the wrong place. That's where you are. You don't have a federal constitutional right to vote. Now, that's Mr. Smith's case. I mean, Mr. Allen's case. I have two others in this group that will testify and have been alleged in this complaint to say, We went to the place where we were supposed to register our change, and they didn't do it. All right, I get your argument. I just want to make sure I understood the facts. Yes. And what matters about going forward with a trial and what matters as far as this is concerned with respect to fashioning a remedy is what was going on here. The Smith County Election Commission and the Jasper County. You get to set aside every bill in the House or everything that passed with this guy's vote for the last two years. I'm going to come straight back there, if I may. When this case went to the legislature, the vote was 4589 to 4589. It had been certified there by the Secretary of State. They'd gone through a routine of declaring it a tie vote, and then under state law, the governor, the Secretary of State, and the two people in contest appeared and drew straws, and the winner was declared. And then that winner was sworn in at the legislature. And then it came behind with the contest, if you will, at the House or the procedure. And what they did was say, we're going to take 4589, and we're going to take five votes away to make it 4584. That's all they addressed. Not a one of these nine people know whether their vote was counted or not. They said, we're going to take away five. And when they took away five, they said it's 4984, and we'll add back the four that we didn't kick out and didn't tell anybody why or why not so that we've got— Essentially, we don't even know whether there was any injury of any kind to any of these plaintiffs because we don't know whether the legislature eliminated their vote or somebody else's. Well, each of these five alleged that they voted for Mr. Eaton, and it's— Their votes may have been counted because we don't know which five were thrown out. No, one of them was not counted because they disqualified five, and then they said four were good. They did that and gave them to Eaton and said that the result would be 4589 to 4588. And if you would allow me to develop that in the district court, I would show that that was a deliberate attempt to flip the election, and it was done with bad faith. And I think— So what? Well— So what? So what is the legislation—what are the defendants going to do about it? They can't call a new election. They can't prosecute somebody for fraud. They can't do anything other than declare who is a fit member for the House of Representatives of Mississippi. And they've done that. Well, respectfully, I'm going to read the complaint and the relief that we requested in the complaint. The plaintiffs do not seek monetary damages. We couldn't be here with legislative immunity if we sought—I mean, under the Eleventh Amendment, if we sought monetary damage. The plaintiffs seek only such equitable and prescriptive remedy perspective, including declaratory or injunctive relief, as the court deems appropriate to redress the violation of the federal constitutional rights of the plaintiffs to equal protection of the law. But you hadn't told me, Mr. Corlew, how—any remedy that can address their injury, which is the denial of the right to vote in Smith and Jasper counties whenever that election occurred. Well, it's in Smith County. How do you know the remedy? They could issue—that's the district courts. Yes, Your Honor. I'm on—let me direct— You're the one that's paid to come up with the redressability. Yes, I'm paid to come up with a redressability in the district court once the facts have been put on the table in front of the court to explain why these people deserve to have redress, even if it can't redress all of their rights that have been denied. I don't deny that. They deserve redress. And I'm not saying they were done right or wrong. I'm saying, assuming everything that you've said, how is the—how are any of the defendants here going to address their loss of the right to vote? I'm going to refer, Your Honor, to a 38-page article written by Kenneth Starr. It's cited in our brief in which he talks about the federal judicial invalidation and other remedies for irregularities in state elections. And the first thing he does is go off on your case, not just Judge Jolly's case, but a Fifth Circuit case. I think it's Bell v. Southwell where the district court—where the Fifth Circuit said the violations here were so egregious that we, as a matter to recompense the denial of civil rights, are going to order a new election. An election contest is to say who won. And Judge Reeves in the district court said, I'm not going to say who won. That's what you do under an election contest. He said he can't say. Pardon? I think Judge Reeves, as I understand it, said he cannot say. Not that he's not going to say. He cannot. On what you presented him, he cannot say that— And we've presented no cross appeal, and we didn't present a cross appeal, and we didn't argue with Judge Reeves about it because we didn't sue under Section 1344 to get an election—for an election contest to contest who the winner of this race was. I'll give you that. I mean, you sued under the right statute, 1983 statute, violation of constitutional rights you've alleged. My point in pointing out the Kenneth Starr article is he spent 38 pages talking about the constitutional equitable powers of the federal court system and that those powers and whether rights have been transgressed or not are things that should be looked at in the district court and that they should be looked at. And he cites authorities for all these things. They should be looked at in the light of the severity or the egregiousness of the violation of the right and the circumstances of addressing it. He even says that there will be cases where the court should say, well, you're two years, three years down the road, and there's just no good remedy here, and as a practical matter, we can't give any. But we're not here, Judge Stewart, asking you to give us an advisory opinion. We're asking you for the opportunity to go to the district court and present our case and let that district court hear the egregiousness or non-egregiousness of these facts and determine whether there is an appropriate remedy. If I were a citizen of Smith County who had been denied my right to vote and a United States district judge said, yep, and those boys at the legislature did it to you, I'd be right pleased with that remedy. And I think the federal courts owe it to our citizens to protect their constitutional right to vote. And I do not believe. If you issue an opinion that blames the legislature for bad faith and taking away the rights of people but give no further interest, say we can't set aside the election or anything else, that is the remedy that you want? It's just for us to label the legislature with a bunch of constitutional rights? I've said it. I don't want your opinion on that issue. I want your opinion that we have standing, that we have a legis jurisdiction, and that we have a right to proceed to trial in the district court and let us prove our case. That's all I ask for. All right. Judge Stewart and Judge Owen, if. . . I think we have your argument. Thank you, sir. Judge Jolley. . . You've done the best you can with what you have. Let me ask you. You've got 40 seconds left. Assuming for the sake of completeness that you got past the series of questions we've asked, Mr. Wallace and the defendants have asserted immunity. What's your response on the immunity? On the immunity? Yes, sir. The legislature is not an alter ego of the state of Mississippi. The legislature can't act without the Mississippi Senate in concert with it. The legislature, the governor can veto acts of the legislature. It is not an alter ego of the state. The Mississippi legislature is not the state. In the Bond case, if I have one more second. . . It's all in the briefs. Finish your sentence. In the Bond case, he was denied seating in the Georgia legislature because he advocated against the Vietnam War. And when it ultimately ended in the United States Supreme Court, the Supreme Court said, we don't allow a citizen's right to a constitutional right to free speech to deny him to be seated in a legislated body, even though the Georgia legislature did it. And in this case, there were claims against the Speaker, President Pro Tem, and so forth in the Senate, and representative members of the legislature. That's what we attempted to do here. We also are on record in the district court. If somebody wants all those Mississippi legislators in there to have to act, we'll sue all 122 of them. Thank you very much. Thank you, Mr. Corlew. Mr. Wallace, rebuttal. May it please the Court, I want to make three quick points on jurisdiction and maybe a couple on immunity. Mr. Corlew says he didn't bring this case under Section 1344. He brought it under Section 1343, the jurisdictional statute, and Section 1983, the substantive statute. That's exactly what the plaintiffs did in Hubbard, and this Court said there was no jurisdiction. That's exactly what the plaintiffs did in Johnson v. Hood, and this Court said there was no jurisdiction. Johnson v. Hood's relevant to the second point I want to respond to. He says there was a deliberate attempt to flip the election. I don't think that's in the complaint. I do think that's in the district court's opinion. But it was certainly in the complaint in Johnson v. Hood. It was a very important constable race in Yazoo City and Yazoo County, and the allegation was they'd been deprived of their state law right to vote arbitrarily and capriciously. And this Court said that claim was so baseless it didn't even satisfy Bell v. Hood jurisdiction, and they threw it out on that basis. If that's his claim, there's no jurisdiction over it. What if the state legislature had thrown out 1,000 votes? I don't think the volume makes a difference. Frankly, in Mississippi there are provisions in the old days when some precincts had some pretty bad problems. The law allows courts to throw out entire precincts, which can add up to thousands of votes. The legislature has never done anything like that, but I don't think it changes anything about jurisdiction. Mr. Corlew is right. We are here on the pleadings, and I'll read you what his pleading says. This is in paragraph 13. The special committee resolution recites that the affidavit votes thrown out involved electors who moved their residence to a different voting precinct within the county and yet did not more than 30 days prior to the election make a written request to the court. That's what I thought I read. Yes. Well, that's what's in the complaint. And he says we were wrong about that because there's a 1987 Attorney General's opinion that says we should allow those people to vote anyway. That's in paragraph 21. So you look at what he alleged in his complaint. He says we got Mississippi law wrong and we got it right. We've cited Rush v. Ivey, which came after 1987, and said the statute means what it says. So we are here on the pleadings. The pleading is that we got Mississippi law wrong, and under Young v. Hoseman, this court says you don't have a federal remedy just because somebody gets Mississippi law wrong. I want to say a couple of things about immunity. He says the House isn't the state for 11th. I guess this is the 11th Amendment, not immunity. Because the House can't act without the Senate and the governor. That is usually the case. But when it comes to judging the elections of its members, it acts alone. Congress of the United States is exactly the same way. When the House decides an election contest, it acts alone. For that purpose, the House of Representatives is the United States. Under the Mississippi Constitution, it is the state of Mississippi. And finally, he says if I need to, under ex parte Young, I'll sue all 122 members of the House. The obvious answer is that's carrying a good legal fiction too far. But the other answer is if he does that and the court were to allow it, you would create a conflict with the Third Circuit in Larson in the impeachment case where the guy didn't leave anything to chance. He sued every member of the Pennsylvania Senate, and the Third Circuit said every member of the Pennsylvania Senate was immune. We think we're immune too. We think there's no jurisdiction. We think that if there were, we'd have legislative immunity. But the bottom line is, and I want to say it before I sit down, we think we did right. You look at his complaint. It says we messed up Mississippi law. We're very conscious of our responsibilities under Mississippi law. We think we read Rush v. Ivey right. We don't think we did anything wrong to anybody, and we think this case ought to be dismissed, and that's what we ask this court to do. Thank you, Mr. Wallace, Mr. Corlew, for the briefing.